UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QATAR PHARMA FOR
PHARMACEUTICAL INDUSTRIES,
W.L.L., *et al.*,

               Petitioners,

         -v-

THE KINGDOM OF SAUDI ARABIA,

               Respondent.

25-CV-7580 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

This action arises out of an arbitration between the petitioners, Quatar Pharma for Pharmaceutical Industries, W.L.L. and Dr. Ahmed Bin Mohammad Al Haie Al Sulaiti (together, "Qatar Pharma"), and the respondent, the Kingdom of Saudi Arabia ("Saudi Arabia").

Before the Court is Qatar Pharma's petition to confirm arbitration (the "Petition") (ECF No. 1-5 ("Pet.")) and Saudi Arabia's cross-motion to stay, dismiss, or change venue (ECF No. 8). For the reasons that follow, Qatar Pharma's Petition is stayed and Saudi Arabia's cross-motion to stay the enforcement proceeding is granted.

I.      **Background**

A.      **Factual Background**

Except where otherwise indicated, the following facts are accepted as true for purposes of the pending petition and cross-motion.

Qatar Pharma is a developer, manufacturer, and distributor of pharmaceutical products founded in 2006 in Doha, Qatar, by Dr. Al Sulaiti. (Pet. ¶ 18.) In 2010, Qatar Pharma decided to expand into the Saudi market, given Saudi Arabia's geographic proximity, large population, and growing pharmaceutical market. (*Id.* ¶ 19.) In 2016, in light of its success, Qatar Pharma

1

began contemplating issuing an initial public offering on the Qatar Stock Exchange.  (*Id.* ¶ 20.)

However, on June 5, 2017, before it completed its initial public offering, Saudi Arabia (and

several other states including Egypt, the United Arab Emirates, and Bahrain) announced a

blockade against Qatar, which immediately and negatively impacted Petitioners' business.  (*Id.*

¶¶ 20-21.)

As a result, Qatar Pharma commenced arbitration, alleging that when Saudi Arabia issued

the blockade measures, it breached the terms of the Organisation of the Islamic Conference

Agreement (the "OIC Agreement") requiring it: (1) to provide their investment full protection

and security; (2) to grant Qatar Pharma and its employees permits necessary for entry, exit, and

residence; (3) to treat Qatar Pharma no less favorably than investors belonging to states not party

to the OIC Agreement; and (4) not to expropriate their investment.  (*Id.* ¶ 22.)

### B.    Procedural Background

The parties spent several years litigating before an arbitration tribunal in the United

Kingdom pursuant to the OIC Agreement.  (Pet. ¶¶ 9-10; 23-31.)

On October 23, 2024, over Saudi Arabia's objection to jurisdiction and defenses on the

merits, a majority of the arbitration tribunal issued an award in favor of Qatar Pharma (the

"Award").  (*Id.* ¶¶ 32-39.)  On November 20, 2024, Saudi Arabia commenced a proceeding to set

aside the Award (the "Set-Aside Proceeding") in the Commercial Court of the United Kingdom,

which possesses supervisory jurisdiction over the Award.  (ECF No. 1 ¶ 2.)  A hearing on Saudi

Arabia's application to have the Award set aside has been scheduled for April 28-30, 2026.  (*Id.*)

On December 5, 2024, Qatar Pharma initiated an action in New York Supreme Court for

New York County, seeking recognition and enforcement of the Award in the United States

pursuant to 9 U.S.C. §§ 201 *et seq.* and the United Nations Convention for the Recognition and

Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the

"New York Convention").  (*See generally* Pet.)

On September 11, 2025, Saudi Arabia removed the Petition to this Court.  (ECF No. 1.)

On October 14, 2025, Saudi Arabia filed its cross-motion to stay, dismiss, or change venue (ECF

No. 8), along with its accompanying memorandum of law (ECF No. 9 ("Mem.")).  On December

5, 2025, Qatar Pharma filed a memorandum of law in support of the Petition and in opposition to

Saudi Arabia's cross-motion to stay (ECF No. 16 ("Opp.").)  Saudi Arabia filed its memorandum

in reply on January 2, 2026 (ECF No. 18 ("Repl.").)[1]

## II.    Legal Standard

The preliminary question is whether this Court should stay consideration of Qatar

Pharma's Petition pending a decision by the English Commercial Court on Saudi Arabia's action

to annul the Award.

Whether to stay an enforcement proceeding is a matter that lies in the court's discretion

where an application has been made in the originating country to have the arbitration award set

aside or suspended.  *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316 (2d Cir.

1998).  The New York Convention provides:

> If an application for the setting aside or suspension of the award has been made to
> a competent authority referred to in article V(1)(e), [namely, the country in which
> or under the law of which, that award was made] the authority before which the
> award is sought to be relied upon may, if it considers it proper, adjourn the
> decision on the enforcement of the award and may also, on the application of the

---

[1] Saudi Arabia also filed a motion for leave to exceed the word count in its reply memoranda. (ECF No. 17.)  It is within the Court's "inherent discretion to strike excessive pages," but the Court also has "reciprocal discretion to waive page limits."  *Nat'l Grid Corp. Servs., LLC v. Brand Energy Servs., LLC*, No. 13-CV-1275, 2017 WL 1194499, at *10 n.7 (E.D.N.Y. Mar. 30, 2017); *see also Perez v. United States Immigration & Customs Enforcement*, No. 19-CV-3154, 2020 WL 5362356, at *9 (S.D.N.Y. Sept. 8, 2020) (declining to strike summary judgment memorandum of law that exceeded the page limits set by the Court).  Accordingly, Saudi Arabia's motion is granted.

party claiming enforcement of the award, order the other party to give suitable security.

New York Convention, art. VI. The Court of Appeals for the Second Circuit has noted the inherent tension between the arbitration goals of expedition and economy and granting a stay of an enforcement proceeding because a stay "impedes . . . the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *Europcar*, 156 F.3d at 317. "[W]hile adjournment is appropriate in certain situations, a district court should not automatically stay enforcement proceedings on the ground that parallel proceedings are pending in the originating country." *Nedagro B.V. v. Zao Konversbank*, No. 02-CV-3946, 2003 WL 151997, at *6 (S.D.N.Y. Jan. 21, 2003). But "where a parallel proceeding is ongoing in the originating country and there is a possibility the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Europcar*, 156 F.3d at 317.

The Second Circuit has articulated several non-exclusive factors to consider in determining whether a stay is appropriate:

(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

4

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country; and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

*Id.* at 317-18 (internal citations omitted). "[T]he first and second factors on the list should weigh more heavily in the district court's determination." *Id.* at 318. Saudi Arabia contends that its motion to stay this action satisfies each of these factors.

## III.    Discussion

### A.    The *Europcar* Factors

On balance, the above-cited factors tip in favor of staying this enforcement proceeding to await the outcome of the Set-Aside Proceeding. Limited delay will result from awaiting a decision in the Set-Aside Proceeding and deferring a decision in this proceeding may avoid inconsistent results.

Qatar Pharma does not dispute that Saudi Arabia has moved to set aside the Award or that the English courts are a "competent authority" under Article VI of the Convention. It is within a district court's discretion to adjourn an enforcement proceeding until the competent authority decides the validity of an arbitration award. *See Spier v. Calzaturificio Tecnica S.p.A.*, 663 F. Supp. 871, 875 (S.D.N.Y. 1987) (adjourning a decision on enforcement pending the resolution of a challenge to the award in Italy where the award was rendered); *InterDigital Commc'ns, Inc. v. Huawei Inv. & Holding Co., Ltd.*, 166 F. Supp. 3d 463, 471 (S.D.N.Y. 2016) (staying an action to enforce an award issued in France where the parties to the arbitration had filed an action in the French courts to vacate or enforce the award).

The first *Europcar* factor—the general objectives of arbitration and the interest in the speedy resolution of disputes—weighs in favor of a stay.  The English Commercial Court is scheduled to hold a hearing on the Set-Aside Proceedings at the end of this month (ECF No. 10 ¶ 11), and Saudi Arabia represents that a decision is expected within three months thereafter (ECF No. 19 ¶¶ 3-6).  Although some delay is possible, proceeding with enforcement in this Court would likely result in duplication and inefficiency.  Any merits determination here would itself be subject to appeal, with attendant delay and expense.  The more efficient course is to await the English court's determination on annulment.  If the Award is set aside, that outcome would provide a basis for refusal of enforcement under Article V(1)(e) of the New York Convention.  *See InterDigital Commc'ns*, 166 F. Supp. 3d at 471-72.  Conversely, if the Award is upheld, that decision would at a minimum constitute a significant factor for this Court to consider should Saudi Arabia continue to oppose enforcement.

Moreover, the second factor—the status of the foreign proceedings—weighs in favor of a stay.  The Set-Aside Proceeding was initiated weeks before the present Petition was filed, reflecting Saudi Arabia's prompt effort to annul the Award.  That prompt action has created a posture in which a timely decision by the English Commercial Court is likely, without inordinate delay.  *See id.* at 472 (concluding that where enforcement and annulment actions were initiated on the same day, the second *Europcar* factor favored a stay).

The third factor—whether the award will receive greater scrutiny in the foreign proceedings—weighs somewhat in favor of a stay.  The United Kingdom, as the seat of the arbitration, constitutes a primary jurisdiction under the New York Convention.  Accordingly, English courts may apply both the grounds set forth in Article V of the Convention and any applicable provisions of domestic law in considering whether to set aside the Award.  By

contrast, this Court, as a court of secondary jurisdiction, is limited to the enumerated grounds in Article V. *See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 115 n.1 (2d Cir. 2007) ("[C]ourts of a *primary* jurisdiction may apply their own domestic law when evaluating an attempt to annul or set aside an arbitral award, [whereas] courts in countries of *secondary* jurisdiction may refuse enforcement only on the limited grounds specified in Article V.").

It is not clear whether the Award will receive greater scrutiny in the English Commercial Court than it would in this Court. (Mem. at 20-21.) Regardless, "the possibility that [it] will set aside the award weighs mildly in favor of granting a stay." *Matter of Arb. of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp.3d 110, 116 (D.D.C. 2015) (cleaned up). Considerations of international comity therefore further support a stay, as allowing the court of primary jurisdiction to complete its review promotes consistency and respect for the supervisory role of the seat of arbitration.

The fourth *Europcar* factor reflects the concern that stays should not be used to delay resolution unnecessarily. *See Spier*, 663 F. Supp. at 875; *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, No. 90-CV-4169, 1990 WL 213030, at *7 (S.D.N.Y. Dec. 18, 1990). Courts therefore recognize that "[a] stay of confirmation should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration." *Europcar*, 156 F.3d at 317. At the same time, a stay may be warranted to avoid inconsistent outcomes between an enforcement proceeding and a parallel action to vacate the Award in the supervisory jurisdiction.

Here, the foreign proceeding is a set-aside action in the United Kingdom, which is generally afforded less weight than an enforcement action. Even so, there is no indication that Saudi Arabia initiated the Set-Aside Proceeding to hinder or delay resolution, that the challenge

is frivolous, or that it constitutes an abusive tactic to forestall enforcement; nor does Qatar

Pharma's briefing contend that Saudi Arabia is acting in bad faith.  (*See generally* Opp.)  Rather,

Saudi Arabia's Set-Aside Proceeding appears to be a conventional effort to seek vacatur before

the courts of the seat of arbitration.  Accordingly, this factor does not weigh against a stay.

Saudi Arabia has presented persuasive arguments that both the fifth factor—the balance

of hardships—and the sixth factor—other relevant circumstances—weigh in its favor.  It faces

the well-recognized burden of litigating identical issues simultaneously in multiple forums, along

with the risk of inconsistent outcomes.  *CC/Devas (Mauritius) Ltd. v. Republic of India*, No. 21-

CV-106, 2022 WL 873620, at *7 (D.D.C. Mar. 24, 2022).  By contrast, Qatar Pharma points

only to the generalized harm of delay.  (Opp. 32-33.)  Accordingly, Saudi Arabia's "potential

hardships outweigh [Qatar Pharma's] concern that the litigation will be unduly delayed."

*CC/Devas*, 2022 WL 873620, at *7.

### B.    Request to Post Security

Finally, Qatar Pharma asks this Court to order Saudi Arabia to post security.  (Opp. at 33-

34.)  Under Article VI of the New York Convention, a court may require a party seeking a stay

to provide "suitable security."  *See* New York Convention art. VI.  Qatar Pharma contends that

"it is telling that Saudi Arabia has not stated that it *will comply* with a judgment of this Court if

its Set-Aside Proceeding is unsuccessful."  (*Id.* at 34.)

The Court declines to impose such a requirement.  At this stage, the Court has not

determined whether it has jurisdiction over the dispute, and ordering security under the

Convention would therefore be premature.  *See CC/Devas*, 2022 WL 873620, at *8.  Moreover,

even assuming jurisdiction, courts in this Circuit generally do not require foreign sovereigns to

post security.  *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,

864 F.3d 172, 189 (2d Cir. 2017).  Foreign sovereigns are presumed solvent and likely to comply with valid court orders issued either in the United States or in their home jurisdictions.  *See CEF Energia, B.V. v. Italian Republic*, No. 19-CV-3443, 2020 WL 4219786, at *7 (D.D.C. July 23, 2020) (Jackson, J.) (cleaned up).

## IV.    Conclusion

For the foregoing reasons, Saudi Arabia's motion to stay this enforcement proceeding is GRANTED, and this proceeding on the Petition to confirm the Award is STAYED.  Throughout the pendency of the stay, the parties shall provide the Court with periodic updates at least every 90 days regarding the status of the Set-Aside Proceeding in the English Commercial Court, and shall notify this Court of the English Commercial Court's ruling within seven days of its issuance.

The Clerk of Court is directed to close the motions at Docket Numbers 8 and 17 and to mark this case as STAYED.

SO ORDERED.

Dated:  April 22, 2026
          New York, New York

_____
          J. PAUL OETKEN
          United States District Judge

9